Samuel T. JACKSON, Petitioner,

v.

STATE OFFICE OF ADMINISTRA-
TIVE HEARINGS and Shelia Bailey
Taylor in her Official Capacity as
Chief Administrative Law Judge,
State Office of Administrative Hear-
ings, Respondents.

No. 10–0002.

Supreme Court of Texas.

Argued Dec. 18, 2010.

Decided July 1, 2011.

Rehearing Denied Sept. 30, 2011.

Samuel T. Jackson, Law Office of Samuel T. Jackson, Arlington, for Samuel T. Jackson.

Brenda Loudermilk, Attorney General Greg W. Abbott, Attorney General of Texas, Clarence Andrew Weber, Kelly Hart & Hallman, LLP, David S. Morales, Deputy First Assistant Attorney General, Office of the Attorney General of Texas, Barbara Bryant Deane, Assistant Attorney General, Austin, for State Office of Administrative Hearings.

Justice JOHNSON delivered the opinion of the Court.

In order to withhold public information requested pursuant to the Texas Public Information Act (TPIA) a governmental entity must demonstrate that the requested information is not within the scope of the TPIA or that it falls within one of TPIA's specific exceptions to the disclosures requested. *See* Tex. Gov't Code §§ 552.101–.148; *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 355–56 (Tex.2000). In this case, the State Office of Administrative Hearings (SOAH) re-

fused to disclose certain decisions and orders in license suspension cases related to delinquent child support. The trial court and court of appeals agreed with SOAH that the information is expressly excepted from disclosure by the Texas Government Code provisions.

We hold that the decisions and orders must be disclosed after redaction of information expressly excepted from disclosure and not already in a public record or otherwise in the public domain. We reverse and remand to the trial court for further proceedings.

## I. Background

Title IV–D of the Social Security Act requires states to designate a "Title–IV" agency to administer child support services. *See* 42 U.S.C. § 654(3); 45 C.F.R. § 303.101. The Office of the Attorney General (OAG) is the designated Title–IV agency in Texas. TEX. FAM.CODE § 231.001. The Child Support Division (Division) of the OAG uses license-suspension proceedings, among other methods, to aid it in collecting delinquent child support. *Id.* § 232.003; *see id.* § 231.001–.309. The Division may issue orders suspending an obligor's license if the obligor (1) owes child support exceeding three times the monthly support set by a child support order; (2) has been given an opportunity to make payments toward the overdue child support under a repayment schedule; and (3) has not complied with the repayment schedule. *Id.* § 232.003(a). The Division refers administrative license-revocation proceedings to SOAH pursuant to an interagency contract. SOAH administrative law judges conduct contested hearings and enter final orders concerning suspension of obligors' licenses. *See* 1 TEX. AD-MIN. CODE §§ 55.208, .212.

In 2006, Samuel T. Jackson requested copies of "each decision, opinion [1] or order issued by SOAH during the months of November of 2005, December 2005, and January 2006 for the Title IV–D Agency of the Office of the Attorney General." He made the request pursuant to Texas Government Code section 552.022(a), which establishes categories of public information that must be disclosed unless an express exception renders the requested information confidential. At SOAH's request, the Attorney General issued an informal letter ruling and concluded that under section 552.101 of the Texas Government Code, together with section 231.108 of the Texas Family Code, the Division must withhold the information.

Jackson sought a writ of mandamus from the trial court directing SOAH to provide the requested information. To support its position, SOAH submitted copies of ten representative decisions and orders for the trial court's *in camera* review. The decisions and orders, which we will refer to as "Orders" for convenience, are for the greatest part standardized documents reciting that the statutory requirements for suspending a license have been met. Nine of the ten contain no information personal to the respondent other than the respondent's name, the number of the license being suspended, and references to the underlying cases in which the trial court issued child support orders or judgments for past due support. The Orders include findings of fact and conclusions of law, but no information identifiable to a particular person beyond that referenced above is included. For example, none of the Orders contain the respondent's social security number, address, telephone number, age, birthdate, or place of employ-

---

**1.** SOAH asserts that SOAH administrative law judges do not issue opinions and Jackson does not argue otherwise. Therefore we will limit our discussion to decisions and orders.

ment. One of the ten Orders contains additional information about the respondent. That Order suspends the respondent's driver's license, but also suspends the suspension based on findings that the respondent is totally disabled and receives a specified amount of social security; lives with his girlfriend; borrows her car on occasion; and assists in caring for his grandchildren. The Orders do not contain information about anyone other than the respondents.

The trial court denied relief and Jackson appealed. The court of appeals concluded that construed together, Texas Government Code section 552.101, Texas Family Code section 231.108, and 42 U.S.C. § 654(26) make the information confidential. 351 S.W.3d 363, 367. It affirmed. *Id.* We granted Jackson's petition for review. 54 TEX. SUP.CT. J. 3 (Oct. 4, 2010).

Jackson argues that (1) section 552.101, which establishes exceptions to disclosure, does not apply to the categories of information requested here, but rather the stricter standard established by section 552.022(a) governs; (2) neither Texas Family Code section 231.108 nor 42 U.S.C. § 654(26) meets the requirements of Texas Government Code section 552.022(a) and therefore neither provides an exception to public disclosure; (3) Texas Family Code section 231.108 does not mandate that SOAH's decisions, orders, and opinions are excepted from public disclosure; and (4) pursuant to the TPIA and the Declaratory Judgments Act (DJA), he is entitled to attorney's fees even though he is a pro se litigant.

SOAH does not dispute Jackson's contention that section 552.022 is the proper section of law under which his request should be considered. Nevertheless, it argues that laws recognized under section 552.101 qualify as "other law" under section 552.022, and that (1) section 231.208 of the Family Code and 42 U.S.C. § 654(26) meet the test set forth by section 552.101, section 552.022, and *In re City of Georgetown,* 53 S.W.3d 328 (Tex.2001); (2) SOAH's Title IV–D decisions and orders are within a category of information that is expressly made confidential; and (3) Jackson is not entitled to attorney's fees because he did not hire an attorney to represent him and has not "incurred" any attorney's fees.

## II. Discussion

### A. Public Information

The Texas Legislature promulgated the TPIA with the express purpose of providing the public "complete information about the affairs of government and the official acts of public officials and employees." TEX. GOV'T CODE § 552.001(a); *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 355–56 (Tex.2000). The Act is aimed at preserving a fundamental tenet of representative democracy: "that the government is the servant and not the master of the people." TEX. GOV'T CODE § 552.001(a). At its core, the TPIA reflects the public policy that the people of Texas "insist on remaining informed so that they may retain control over the instruments they have created." *Id.; see Tex. Comptroller of Pub. Accounts v. Attorney Gen. of Tex.,* 354 S.W.3d 336, 343, 2010 WL 4910163 (Tex.2010). To that end, the TPIA directs that it be liberally construed in favor of disclosure of requested information. TEX. GOV'T CODE § 552.001; *see Dallas Morning News,* 22 S.W.3d at 356.

Public information is "information that is collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business: (1) by a governmental body; or (2) for a governmental body and the governmental body owns the information or has a right of

access to it." Tex. Gov't Code § 552.002. Public information is available upon request unless it falls into an exception provided for in the TPIA. *See id.* §§ 552.021(a), 552.101–.148 (providing multiple exceptions to disclosure); *In re Georgetown*, 53 S.W.3d at 331.

## B. Exceptions to Disclosure

Texas Government Code section 552.101 provides that information is excepted from disclosure requirements "if it is information considered to be confidential by law, either constitutional, statutory or by judicial decision." Tex. Gov't Code § 552.101. In section 552.022, however, the TPIA sets out eighteen categories of public information that are "not excepted from required disclosure under [chapter 522] unless they are *expressly* confidential under other law." *Id.* § 552.022 (emphasis added). That is, requested information falling within the scope of the eighteen categories must be disclosed unless there is some express basis in "other law" found outside of the TPIA that not only makes the information confidential, but does so expressly. *Id.; see In re Georgetown*, 53 S.W.3d at 334 (noting, in considering whether certain attorney work product is confidential, that "[a] law does not have to use the word 'confidential' to expressly impose confidentiality").

Section 552.022(12) lists, as a category of public information required to be disclosed, "final opinions, including concurring and dissenting opinions, and orders issued in the adjudication of cases." Tex. Gov't Code § 552.022(12). Jackson argues that no "other law" expressly makes SOAH's decisions and orders confidential. SOAH urges that federal law and the Texas Family Code are "other law" providing a basis for nondisclosure. We will address each statute referenced by SOAH in turn, beginning with federal law.

## C. Federal Law

■ The Social Security Act sets out requirements for a "state plan for child and spousal support." 42 U.S.C. § 654. As prerequisites for federal funding, these programs must provide child support establishment, enforcement, and modification services, medical support enforcement, and parent locator services. Doretha Smith Henderson, *Title IV–D and Child Support Enforcement: Confusion and Misinformation Abound*, 65 Tex. B.J. 504, 506 (2002). The Texas Legislature has ensured Texas's compliance with these requirements through various statutes governing child support. *Id.; see, e.g.,* Tex. Fam.Code chs. 158, 231. The federal legislation also requires that a State plan for child support must

> have in effect safeguards, applicable to all confidential information handled by the State agency, that are designed to protect the privacy rights of the parties, including—
>
> > (A) safeguards against unauthorized use or disclosure of information relating to proceedings ... used to ... enforce support.

42 U.S.C. § 654(26). SOAH argues that the language "relating to proceedings ... to ... enforce support" in the federal statute encompasses the information Jackson seeks. SOAH contends that 42 U.S.C. § 654(26) is express "other law" that entirely excepts its decisions and orders from disclosure. We disagree. Neither the language of 42 U.S.C. § 654(26) nor that of Texas Government Code section 552.022 cuts as broadly as SOAH contends.

Title 42 U.S.C. § 654 directs states to implement safeguards designed to protect the privacy rights of parties and confidential information related to child support. But the statute does not specify what information is confidential, nor does it ex-

pressly preclude disclosure of all information related to child support and child support proceedings. Nor do the relevant federal regulations expressly except nonconfidential parts of SOAH's decisions and orders from the TPIA's mandate to disclose. *See* 45 C.F.R. § 303.21.

The TPIA directs courts to strictly construe its language in order to promote open government unless the information sought is "expressly made confidential under other law." TEX. GOV'T CODE § 552.022(a); *see id.* § 552.001. We disagree with SOAH and the court of appeals insofar as they conclude that 42 U.S.C. § 654(26) provides an express exception to disclosure for SOAH's decisions and orders in their entirety.

### D. The Texas Family Code

■ Section 231.108(a) of the Family Code provides, in relevant part, "[e]xcept as [otherwise] provided ... all files and records of services provided under this chapter, including information concerning a custodial parent, noncustodial parent, child, and an alleged or presumed father, are confidential." TEX. FAM.CODE § 231.108. SOAH argues, and the court of appeals agreed, that this directive provides "other law" as described in Texas Government Code section 552.022 and makes all the information Jackson seeks expressly confidential. 351 S.W.3d 363. The court of appeals reasoned that the information contained in the files and records is made expressly confidential under Texas Family Code section 231.108(a), "and it would undo federal and state legislative intent to require the disclosure of confidential infor-

mation merely because the statutes do not use the words 'opinion,' 'decision,' or 'order' in their clear directives to keep the information from public disclosure." *Id.* at 367. SOAH argues that the language "information concerning" is broad enough to include the entirety of the Orders Jackson requested. Again, we disagree.

Jackson does not seek disclosure of "files and records of services," provided under chapter 231 as they are referenced in Family Code section 231.108. Rather, he requested decisions and orders relating to license suspension proceedings. Family Code chapter 232, not 231, governs license suspension proceedings. *See* TEX. FAM. CODE ch. 232. And chapter 232 does not expressly except an agency's decisions, orders relating to the proceedings, or information in them, from public disclosure. *See id.*

■ But we conclude that while section 231.108 does not provide a basis to withhold the decisions and orders in their entirety, the statute expressly provides that information obtained during provision of services under Chapter 231 is confidential, "including information concerning a custodial parent, noncustodial parent, child, and an alleged or presumed father."[2] To the extent that such information appears within the decisions and orders requested by Jackson, it must be redacted. *See id.* § 231.108(a) (excepting from public disclosure "all files and records of services provided *under this Chapter*") (emphasis added). This is, of course, unless the information is already part of the public domain because it appears in public documents.[3]

---

2. Chapter 231 services concern (A) administration of the Title IV–D program; (B) services provided by the Title IV–D program, such as, for example, child support services relating to eligibility, assignment of payments, and paternity establishment; (C) payment of

fees and costs to the Title IV–D agency; (D) location of parents and resources. *See* TEX. FAM CODE ch. 231 subsecs. (A)-(D).

3. Construing section 231.108(a) to require redaction of information already available in

Looking to its plain language, section 231.108 does not provide an exception for information obtained in the course of a Chapter 232 license-suspension proceeding. *Compare id.* § 231.108, *with id.* ch. 232. Therefore, any information obtained during chapter 232 proceedings that appears in the decisions and orders is public information unless "other law" beyond the TPIA expressly makes such information confidential. *See* TEX. GOV'T CODE § 552.022. SOAH does not argue that any such exception applies to the specific information contained in the decisions and orders Jackson requested, other than the provisions of Chapter 231.[4] If there are other laws excepting the information from required disclosure under the TPIA, SOAH must disclose the decisions and orders after redacting that information, which includes information obtained during provision of Chapter 231 services and not contained in public records other than the SOAH decisions and orders.

Considering the overarching principle of open government that has long been the public policy of this State, requiring release of SOAH's Orders after redaction of such information is more faithful to the language of the statute and Texas public policy than a blanket withholding of the Orders altogether. *See id.* at 552.001.

Thus, we disagree with SOAH and the court of appeals insofar as they conclude that Texas Family Code section 231.108(a) provides an exception to disclosure for SOAH's Orders in their entirety.

We take at face value SOAH's argument that deleting or redacting confidential information from its decisions and orders will take time, but the ten representative Orders submitted in this case do not demonstrate that redacting confidential information will be overly burdensome, because relatively few redactions will have to be made.

To begin, the Orders are not lengthy: five of the ten are one page long, four are three pages long, and one is four pages long. The one-page Orders deny a motion for rehearing, dismiss the proceedings, stay a license suspension, vacate a license suspension, and grant proposed consent Orders. Three of those Orders do not contain any information about the respondent other than his name; they do not even include the number of the suspended license. The respondent's license number appears in six of the seven remaining orders. In only one order does information about the respondent appear that goes beyond the respondent's name and the number of the suspended license. Assuming

the public domain would be nonsensical. *See id.* Indeed, a well established canon of construction dictates that "the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell,* —— S.W.3d ——, ——, 2011 WL 182230 (Tex. 2011).

4. Because SOAH does not argue that any such exception applies other than those considered here, we do not address whether existing "other law" would expressly except information in the Orders. *See In re Georgetown,* 53 S.W.3d at 332 (explaining that under section 552.022, "other law" includes statutes and judicially promulgated rules,

such as rules of evidence and procedure). This Court has recognized "other law" that operates as an express exception to public disclosure under section 552.022. *See, e.g., Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers,* 343 S.W.3d 112, 116 (Tex.2011) (holding that the common law right to be free from physical harm excepts core public information from disclosure if disclosure "would pose a substantial threat of physical harm"); *In re Georgetown,* 53 S.W.3d at 336 (concluding that Texas Rules of Civil Procedure 192.3(e) and 192.5 and Texas Rule of Evidence 503(a)(5), (b)(1) provide express exceptions to public disclosure of core public information).

the information was disclosed during provision of Chapter 231 services, including information concerning a custodial parent, noncustodial parent, child, and an alleged or presumed father, and is not a part of public documents, that information should be protected from disclosure. *See* TEX. FAM.CODE § 231.108(a). It is gathered into one paragraph so it would take minimal time to redact.

### E. Court Orders and Court Records

■ The parties dispute whether SOAH's orders constitute "court orders" and thus they dispute the applicability of Government Code section 552.022(17), which lists as a category of public information "information that is also contained in a public court record." TEX. GOV'T CODE § 552.022(17). Assuming without deciding that SOAH's decisions and orders fall under section 552.022(17), the result in this case is the same. However, our analysis in regard to section 552.022(12) applies: redactions must be made of information obtained during the provision of Chapter 231 services that is not in a public record and of any other information expressly made confidential by other law.

■ Jackson also argues that Texas Government Code section 2001.004(3) creates a right of access to SOAH's decisions and orders. In relevant part, the Administrative Procedure Act (APA) provides, "In addition to other requirements under law, a state agency shall … make available for public inspection all final orders, decisions, and opinions." TEX. GOV'T CODE § 2001.004(3). But this general requirement of disclosure conflicts with the more specific provisions in the Texas Family Code pertaining to Title IV–D information.

*See, e.g.*, TEX. FAM.CODE § 231.108. We have recently reiterated the rule that "a specific statutory provision prevails as an exception over a conflicting general provision." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (Tex.2010); *see* TEX. GOV'T CODE § 311.026(b). Moreover, as a matter of statutory construction, "if statutes are irreconcilable, the statute latest in date of enactment prevails." *First State Bank of DeQueen*, 325 S.W.3d at 637; *see* TEX. GOV'T CODE § 311.025(a).

The Texas Legislature enacted the APA in 1975. *See* Act of Apr. 8, 1975, 64th Leg., R.S., ch. 61, § 4, 1975 Tex. Gen. Laws 136, 137 (amended 1991).[5] The requirement that certain Title IV–D information remain confidential first appeared in 1985 in the Human Resources Code. *See* Act of May 27, 1985, 69th Leg., R.S., ch. 232, § 15, 1985 Tex. Gen. Laws 1158, 1171. The statute was reworded to its current version in 1989 and reenacted in 1993. *See* Act of July 14, 1989, 71st Leg., 1st C.S., ch. 25, § 39, 1989 Tex. Gen. Laws 74, 89–90; Act of May 13, 1993, 73rd Leg., R.S., ch. 261, § 3, 1993 Tex. Gen. Laws 567, 568. Because section 231.108 of the Family Code is both the more specific and the later-enacted statute, we agree with SOAH that the Family Code prevails to the extent it conflicts with 2001.004 of the APA. *See First State Bank of DeQueen*, 325 S.W.3d at 637.

Jackson also asserts that section 155.31(m)(3) (now section 155.423) and section 155.47 (now section 155.409) of the Texas Administrative Code compel disclosure of the documents he seeks. Section 155.423 makes SOAH records open to the public unless sealed by the court and sec-

---

5. The Legislature recodified the APA in 1993, and section 2001.004 was added to the Government Code at that time. *See* Act of May 4, 1993, 73rd Leg., R.S. ch. 261, §§ 1, 47, 1993 Tex. Gen. Laws 583, 735. The Legislature did not make any substantive changes to section 2001.004. *Id.*

tion 155.409 makes SOAH proceedings open to the public. *See* 1 Tex. Admin. Code §§ 155.409, 155.423. Because Texas Family Code section 231.108 is the more specific statute, and for the reasons set forth above, we agree with SOAH that the Family Code prevails over the provisions referenced by Jackson to the extent of any conflict. The referenced sections of the Administrative Code do not require greater disclosure of information than that we have already determined is required by the TPIA. *See First State Bank of De-Queen,* 325 S.W.3d at 637.

■ Finally, Jackson argues that Texas Rule of Civil Procedure 76a, regarding the sealing of district court records, would compel disclosure in this case. The rule provides that

Court records may not be removed from court files except as permitted by statute or rule. No court order or opinion issued in the adjudication of a case may be sealed. Other court records, as defined in this rule, are presumed to be open to the general public and may be sealed only upon a showing of all of the following

(a) a specific, serious and substantial interest which clearly outweighs:

(1) this presumption of openness;

(1) any probable adverse effect that sealing will have upon the general public health or safety;

(b) no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted.

TEX.R. Civ. P. 76a.[6] SOAH responds that Rule 76a does not apply to the documents Jackson seeks because SOAH is not a court and hence SOAH records are not "court records" under Rule 76a. SOAH also points out even if the rule did apply to SOAH, it is trumped by the TPIA to the extent of inconsistent provisions. We agree.

We need not decide whether Rule 76a applies to SOAH, nor whether the documents Jackson requested are court orders. If they were, Rule 76a would conflict with Texas Family Code section 231.108 to the extent Rule 76a would require disclosure of information in SOAH's decisions and orders that we have already determined must be redacted. "[W]hen a rule of procedure conflicts with a statute, the statute prevails unless the rule has been passed subsequent to the statute and repeals the statute as provided by Texas Government Code § 22.004." *Johnstone v. State,* 22 S.W.3d 408, 409 (Tex.2000); *see* Tex. Gov't Code § 22.004; *Few v. Charter Oak Fire Ins. Co.,* 463 S.W.2d 424, 425 (Tex.1971) ("[Where a] rule of the court conflicts with a legislative enactment, the rule must yield."). Jackson does not argue that Rule 76a was passed subsequent to the TPIA or the Texas Family Code.[7] Further, as explained above, a more specific statute will prevail over a conflicting general provision. *See* Tex. Gov't Code § 311.026; *First State Bank of DeQueen,* 325 S.W.3d at 637. Here, the TPIA and Family Code provisions directly address the confidentiality of certain information Jackson requested. Therefore, even assuming Rule 76a ap-

---

6. SOAH's own rule of procedure concerning sealing of documents in a contested case tracks the language of Rule 76a. *See* 1 Tex. Admin. Code § 155.31(m)(3) (now section 155.423).

7. Texas Rule of Civil Procedure 76a was not passed subsequent to Texas Government Code section 552.022. Rule 76a became effective September 1, 1990. *See* Tex.R. Civ. P. 76a. The Legislature passed Texas Government Code section 552.022 in 1999. *See* Act of May 23, 1999, 76th Leg., R.S., ch. 1319, § 5, 1999 Tex. Gen. Laws 4501, 4501–02 (current version at Tex. Gov't Code § 552.022).

plies, it is trumped by the TPIA and Texas Family Code to the extent of any conflicts and does not affect our conclusion as to what information is excepted from disclosure.

## E.  Conclusion

The decisions and orders Jackson requested must be disclosed. *See* TEX. GOV'T CODE § 552.002. The Legislature has clearly expressed its intent that exceptions to disclosure be construed narrowly. *See* TEX. GOV'T CODE § 552.001; *In re Georgetown,* 53 S.W.3d at 340 (" 'When the Legislature has intended to make information confidential, it has not hesitated to so provide in express terms.' " (quoting *Birnbaum v. Alliance of Am. Insurers,* 994 S.W.2d 766, 776 (Tex.App.-Austin 1999, pet. denied); *see also Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex. 1981)) ("[E]very word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose.") (citations omitted). We decline to read the language of the statute broader than it is written and we conclude that the purpose and intent of the TPIA can be fulfilled by disclosing the requested documents with redactions. *See City of Fort Worth v. Cornyn,* 86 S.W.3d 320, 326 (Tex.App.-Austin 2002, no pet.) ("To find otherwise would also be inconsistent with the Legislature's directive to liberally construe the Act in favor of disclosure."). We therefore hold that SOAH must disclose the requested decisions and orders after redaction of any information obtained during provision of Chapter 231 services, such as information concerning a custodial parent, noncustodial parent, child, and an alleged or presumed father, that was not already in the public domain.

## III.  Attorney's Fees

Jackson argues that he is entitled to attorney's fees under section 552.323 of the TPIA and section 37.009 of the Declaratory Judgments Act (DJA). He concedes case law is "fairly uniform" that a pro se litigant is not entitled to attorney's fees, but argues that his case is distinguishable because he is a licensed attorney. He also urges that public policy supports awarding his costs for challenging the unreasonable denial of his right of access to judicial documents. We disagree.

## A.  The TPIA

The TPIA provides that a party may recover attorney's fees "incurred." The statute specifies, in relevant part:

(a) In an action brought under Section 552.321 or 552.3215, the court shall assess costs of litigation and reasonable attorney fees incurred by a plaintiff who substantially prevails, except that the court may not assess those costs and fees against a governmental body if the court finds that the governmental body acted in reasonable reliance on:

(1) a judgment or an order of a court applicable to the governmental body;

(2) the published opinion of an appellate court; or

(3) a written decision of the attorney general, including a decision issued under Subchapter G or an opinion issued under Section 402.042.

TEX. GOV'T CODE § 552.323(a).

In *Garcia v. Gomez,* a case brought under the Texas Medical Liability Act, we explained that the word "incurred," as it relates to an award of attorney's fees, "act[s] to limit the amount of attorney's fees the trial court may award." 319 S.W.3d 638, 642 (Tex.2010). We have also said that "[a] fee is incurred when one becomes liable for it." *Id.; see also Aviles*

*v. Aguirre,* 292 S.W.3d 648, 649 (Tex.2009). Jackson represented himself, so he did not incur attorney's fees as that term is used in its ordinary meaning because he did not at any time become liable for attorney's fees. *See Aviles,* 292 S.W.3d at 649; *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.,* 19 S.W.3d 393, 399 (Tex.2000) ("[W]e may presume the Legislature intended the plain meaning of its words.").

Jackson cites *Cazalas v. U.S. Dep't of Justice,* 709 F.2d 1051 (5th Cir.1983), to support his contention that pro se attorney-litigants can recover attorney's fees. While it is true that in *Cazalas* the Fifth Circuit allowed such a recovery, subsequent decisions seem to indicate that *Cazalas* is no longer the prevailing law. *See Kay v. Ehrler,* 499 U.S. 432, 435, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991); *Burka v. U.S. Dep't of Health & Human Servs.,* 142 F.3d 1286, 1287–89 (D.C.Cir.1998). In *Kay* the United States Supreme Court clarified that an attorney representing himself in a civil rights case was not eligible for the award. *See* 499 U.S. at 437, 111 S.Ct. 1435. The Supreme Court reasoned that the word "attorney" "assumes an agency relationship" and that Congress's objective was to "enable potential plaintiffs to obtain the assistance of competent counsel." *Id.* at 435–36, 111 S.Ct. 1435; *see Burka,* 142 F.3d at 1289 (refusing to award attorney's fees to a pro se attorney-litigant who prevailed on a Federal Freedom of Information Act claim). A pro se attorney-litigant, the Court opined, is bereft of the benefits an independent third party brings "in framing the theory of the case . . . and in making sure that reason, rather than emotion, dictates

the proper tactical response to unforeseen developments in the courtroom." *Kay,* 499 U.S. at 437, 111 S.Ct. 1435. The Supreme Court concluded that an award of attorney's fees to a successful pro se attorney-litigant would not serve "[t]he statutory policy of furthering the successful prosecution of meritorious claims" because it would disincentivize attorneys "to retain counsel in every such case." *Id.* at 438, 111 S.Ct. 1435; *Burka,* 142 F.3d at 1289.

After the Supreme Court's decision in *Kay,* the majority view in federal courts turned against the award of attorney's fees to pro se attorney-litigants.[8] *Burka,* 142 F.3d at 1288–89 ("Virtually all other courts that have considered the issue since *Kay* have reached a similar conclusion."). And we find the reasoning in *Burka* persuasive in light of the similarities between the Federal Freedom of Information Act and the TPIA. *Compare* 5 U.S.C. § 552(a)(4)(E)(I) ("The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under [the Freedom of Information Act] in which the complainant has substantially prevailed."), *with* TEX. GOV'T CODE § 552.323 ("In an action brought under [the TPIA], the court shall assess costs of litigation and reasonable attorney fees incurred by a plaintiff who substantially prevails. . . .").

In light of the foregoing, we hold that Jackson cannot recover fees from SOAH under the TPIA.

**B.  The DJA**

█ Jackson also claims entitlement to attorney's fees under section 37.009 of the

---

8.  We note that the Fifth Circuit's opinion in *State v. Interstate Commerce Commission* was issued three months after the Supreme Court's opinion in *Kay. See* 935 F.2d 728 (5th Cir.1991). But, as *Burka* points out, *Interstate Commerce Commission* does not mention *Kay* at all in its analysis of awarding attor-

ney's fees to pro se attorney-litigants. *Burka,* 142 F.3d at 1290. *See generally Interstate Commerce Comm'n,* 935 F.2d 728. *Interstate Commerce Commission* is now considered an outlier on the issue in the federal courts. *See Burka,* 142 F.3d at 1290.

Texas Civil Practice and Remedies Code. That section provides, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem.Code § 37.009.

In *MBM Financial Corp. v. Woodlands Operating Co.*, we considered whether a breach of contract claimant who could not recover attorney's fees under Chapter 38 of the Civil Practice and Remedies Code could nevertheless recover fees under the DJA. 292 S.W.3d 660, 668 (Tex.2009). We noted that regardless of whether declaratory judgments are available in tandem with all other claims, the same is not necessarily true of claims for attorney's fees under the DJA. *Id.* at 669 ("If repleading a claim as a declaratory judgment could justify a fee award, attorney's fees would be available for all parties in all cases."). We further explained that allowing fees under the DJA would frustrate the limits imposed by the specific provisions governing attorney's fees for breach of contract claims. *Id.* at 670.

The same reasoning applies here: allowing Jackson to recover attorney's fees under the DJA when he cannot meet the requirements for their recovery under the TPIA would frustrate the limits established by the TPIA. Furthermore, we have explained that an award of attorney's fees under the DJA is unavailable if the claim for declaratory relief is merely incidental to other claims for relief. *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 289 (Tex.2002). Here, Jackson's claim against SOAH arises specifically under the TPIA, yet he argues that because he also sought disclosure under other statutes and rules he should not be limited to the TPIA to recover fees.[9] We hold that his claims for attorney's fees are incidental to his central theory of relief which arises squarely under the TPIA. *See MBM Fin. Corp.*, 292 S.W.3d at 660 ("While the Legislature intended the Act to be remedial, it did not intend to supplant all other statutes and remedies."). Thus, we hold that Jackson cannot recover attorney's fees under the DJA.

### IV. Conclusion

We reverse the court of appeals' judgment. We remand the cause to the trial court for further proceedings consistent with this opinion.

atory judgment, forecloses declaratory relief for private individuals seeking information under the TPIA.

---

9. We do not reach SOAH's argument that section 552.3215 of the TPIA, which authorizes the attorney general and local prosecutors to bring actions for injunctive and declar-