# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00459-CV

**ICON Benefit Administrators II, L.P.; American Administrative Group, Inc.; and HealthSmart Preferred Care, II, L.P., Appellants**

**v.**

**Greg Abbott, Attorney General of Texas; and The City of Lubbock, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-11-001866, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## O P I N I O N

This is an appeal from an order denying a temporary injunction in a suit challenging an Attorney General's open-records decision. The suit was initiated by appellants ICON Benefit Administrators II, L.P.; American Administrative Group, Inc. (AAG); and HealthSmart Preferred Care, II, L.P. (collectively the "Parker Group"[1]) and seeks to compel the City of Lubbock and the Attorney General to withhold from public disclosure an "audit report" in the City's possession that addresses services provided by Parker Group entities to the City. Following an evidentiary hearing, the district court issued an order denying the Parker Group's application for temporary injunction. The Parker Group filed a notice of appeal and moved for an emergency stay pending this Court's resolution of its appeal. We granted the stay. For the reasons explained below, we now overrule the Parker Group's contentions on appeal, affirm the district court's order, and vacate the stay.

---

[1] A reference to the entities' common ownership or affiliation, also used by the parties.

## BACKGROUND

From 2004 through 2006, the City of Lubbock contracted with two Parker Group companies—appellants ICON and AAG—to provide third-party administration of the City's self-funded health-care plan. The City contracted with a third Parker Group company—appellant HealthSmart—to serve as the City's "preferred provider" organization for that same plan. During the course of the City's relationship with the Parker Group, disputes arose as to whether ICON and AAG had complied with their administrator contracts with the City, and the Parker Group ultimately initiated arbitration proceedings to resolve the disputes. The Parker Group also filed a related defamation action in a Dallas County court at law against several of the City's employees who, according to the Parker Group, had publicly and falsely accused the Parker Group of mishandling the City's contracts.

In the Dallas defamation case, the City hired an expert, Sally Reaves, to audit the administrative services that ICON and AAG had performed for the City's health-care plans. The purpose of the audit was to determine whether the employees' alleged statements regarding the Parker Group were, in fact, true, and thus not actionable defamation. Thereafter, a discovery dispute arose as to whether Reaves could gain access to certain Parker Group documents and information that were ostensibly necessary for her to conduct her audit. The Dallas County Court at Law ordered the Parker Group to produce certain sensitive materials under a protective order that restricted the use and disclosure of the materials and "all information derived therefrom." The protective order was later amended to allow the City to use the protected materials in the arbitration proceeding.

Before Reaves finished her audit and report, the parties settled the Dallas defamation case, and it was dismissed. But the arbitration remained ongoing, and the parties to that proceeding

2

disputed whether Reaves's forthcoming audit could be used in it. The arbitrator ruled that the City could use the audit and issued a protective order that was substantially identical to the one issued in the Dallas lawsuit. The City instructed Reaves to finish her audit. Reaves later submitted to the City a document dated March 18, 2011, and titled "Audit of the Parker Group Administration of Benefit Plans for the City of Lubbock" (Reaves Audit).

In April 2011, shortly after Reaves submitted the Reaves Audit to the City, the City received three requests under the Texas Public Information Act (PIA)[2] that called for its production. Concluding that the Parker Group's interests were implicated, the City notified the Parker Group of the requests and requested an opinion from the Attorney General as to whether the PIA required it to produce the Reaves Audit. *See* Tex. Gov't Code §§ 552.301 (PIA provision requiring governmental body that receives written request for information it wishes to withhold to ask for decision from attorney general), .305 (requiring governmental body that requests decision to notify affected third parties that they may submit briefing to attorney general). The Attorney General determined that the City was required to release the Reaves Audit because it was subject to mandatory disclosure under the PIA. *See* Tex. Att'y Gen. OR2011-08928.

Around this same time, the Parker Group had filed a motion in the dismissed Dallas defamation suit seeking enforcement of that court's protective order to prevent public disclosure of the Reaves Audit. The Parker Group argued that the protective order prohibited public disclosure of the Reaves Audit because it contained protected materials and information derived from them. After a hearing, the Dallas County Court at Law signed an order in July 2011 declaring that public

---

[2] The PIA is codified in Chapter 552 of the Government Code. *See* Tex. Gov't Code §§ 552.001–.353.

3

disclosure of the Reaves Audit was not prohibited by the protective order and denying the Parker Group's motion. The Parker Group appealed the county court at law's order to the Dallas Court of Appeals. Recently, that court reversed the county court at law's order, holding that the protective order prohibits public disclosure of the Reaves Audit. *See Icon Benefit Admins. II, L.P. v. Mullin*, __S.W.3d__, No. 05–11–00935–CV, 2013 WL 2423171, at *6 (Tex. App.—Dallas June 5, 2013, no pet. h.).

While its appeal to the Dallas Court of Appeals remained pending, the Parker Group filed the underlying suit in the Travis County District Court against the Attorney General and the City, seeking declaratory judgment that the Reaves Audit was protected from public disclosure. *See* Tex. Gov't Code §§ 552.3215, .325 (PIA provision authorizing suit for declaratory judgment by party seeking to withhold information from requestor). The Parker Group also requested temporary and permanent injunctions enjoining the public release of the audit. The district court granted the Parker Group's request for a temporary restraining order, but after discovery and an evidentiary hearing on its application for a temporary injunction, issued an order denying Parker Group's application and dissolving the temporary restraining order. In its order, the district court stated that the Reaves Audit "is a completed report, audit, evaluation, or investigation made of, for, or by a governmental body" under PIA section 552.022(a), that "there is no other law excepting the Reaves Audit from disclosure," and that the Parker Group "failed to prove a probable right of recovery to support" its application for temporary injunction. It is from this order that Parker Group now appeals.[3]

---

[3] *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4) (permitting interlocutory appeal of district court's grant or denial of an application for temporary injunction).

4

**DISCUSSION**

The Parker Group brings six issues on appeal. In four of the six issues, it challenges the district court's decision to deny the temporary injunction, principally arguing that it has shown a probable right to relief. In its remaining two issues, the Parker Group challenges evidentiary rulings made by the district court during the temporary-injunction hearing.

**Temporary injunction**

A temporary injunction is an extraordinary remedy that does not issue as a matter of right. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The purpose of a temporary injunction is to preserve the subject matter of the litigation pending a trial on the merits. *Id*. To obtain a temporary injunction, the applicant must plead and prove three elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id*. Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Id*. Only the second element is implicated in this appeal.

Because the decision to grant or deny a temporary injunction lies within the sound discretion of the trial court, we will not disturb that decision absent a clear abuse of discretion. *See id*. We must not substitute our judgment for that of the trial court unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Id*. We review the evidence before the trial court in the light most favorable to the court's ruling, draw all reasonable inferences from the evidence, and defer to the trial court's resolution of conflicting evidence. *See Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *INEOS Grp. Ltd. v. Chevron Phillips Chem. Co., L.P.*, 312 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2009, no pet.). A trial court does not abuse

its discretion if it heard conflicting evidence, and evidence appears in the record that reasonably supports the trial court's decision. *See Butnaru*, 84 S.W.3d at 211; *Davis*, 571 S.W.2d at 862; *INEOS*, 312 S.W.3d at 848. A trial court abuses its discretion in granting or denying a temporary injunction when it misapplies the law to the established facts. *See State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975).

### The Texas Public Information Act

The Texas Legislature enacted the PIA with the express purpose of providing the public "complete information about the affairs of government and the official acts of public officials and employees." Tex. Gov't Code § 552.001(a); *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 293 (Tex. 2011). The PIA is aimed at preserving a fundamental tenet of representative democracy: "that the government is the servant and not the master of the people," Tex. Gov't Code § 552.001(a); *Jackson*, 351 S.W.3d at 293, and reflects the public policy that the people of Texas "remain[] informed so that they may retain control over the instruments they have created," Tex. Gov't Code § 552.001(a); *see Jackson*, 351 S.W.3d at 293. To advance these policy goals, the Legislature has directed that we liberally construe the PIA in favor of disclosure of requested information. *See* Tex. Gov't Code § 552.001; *Jackson*, 352 S.W.3d at 293.

The PIA guarantees access to "public information," subject to certain exceptions. *See generally* Tex. Gov't Code §§ 552.001–.353. "Public information" is defined within the PIA as "information collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business" by or for a governmental body. *Id.* § 552.002(a). There is no dispute that the Reaves Audit is "public information" under the PIA. As such, it is subject to

6

public disclosure under section 552.021 unless it qualifies for one of the exceptions to disclosure provided in subchapter C of the PIA. *See* Tex. Gov't Code §§ 552.101–.153 (subchapter C, titled "Information Excepted From Required Disclosure"). The exceptions "embrace the understanding that the public's right to know is tempered by the individual and other interests at stake in disclosing the information." *Texas Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P.*, 343 S.W.3d 112, 114 (Tex. 2011). But the PIA also generally excludes certain categories of public information—called "core public information"—from the exceptions, unless the information is made expressly confidential under other law. *See* Act of May 25, 1999, 76th Leg., R.S., ch. 1319, § 5, 1999 Tex. Gen. Laws 4500, 4501–02 (current version at Tex. Gov't Code § 552.022) (hereinafter cited as "Former Tex. Gov't Code § 552.022") (providing mandatory disclosure for certain categories of documents unless they are "expressly confidential under other law");[4] *Cox*, 343 S.W.3d at 114 (describing categories as "core public information"). Of particular relevance here, "a completed report, audit, evaluation, or investigation made of, for, or by a governmental body" is one of the categories of "core public information." *See* Former Tex. Gov't Code § 552.022(a)(1).

### *Probable right to relief*

The Parker Group urges that the district court abused its discretion in concluding that they had failed to show a probable right to relief, i.e., a likelihood of prevailing on its claims that

---

[4] We cite to the 1999 version of PIA section 552.022 because that is the version that was in effect when the PIA request was made in this case. *See* Act of May 28, 2011, 82d Leg., R.S., ch. 1229, § 2, 2011 Tex. Gen. Laws 3271 (making amendments applicable to requests for information received on or after Sept. 1, 2011). The 2011 changes to subsection (a) provided that core public information was not excepted from disclosure "unless made confidential under this chapter or other law." *See id.*

the Reaves Audit is shielded from disclosure under the PIA. *See Butnaru*, 84 S.W.3d at 204 (noting that applicant for temporary injunction must show a probable right to relief). To that end, they principally challenge the district court's underlying finding that the Reaves Audit is a "completed" audit under PIA section 552.022(a) and, thus, core public information. Specifically, they insist that (1) the Reaves Audit is not a "completed" audit under the PIA and, therefore, is not "core" public information that must be produced regardless of any applicable PIA exceptions; and thus (2) the Reaves Audit is excepted from disclosure under PIA section 552.107(b) because "a court order has prohibited disclosure of the information."[5]

The Parker Group places great emphasis on what they believe to be erroneous comments on the record by the district court to the effect that a "completed" audit requires only facial completeness. However, any such views expressed by the district court were not reflected in any findings or conclusions and, consequently, are not material to our review. *See Cherokee Water Co. v. Gregg Cnty. Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990) (holding that judge's comments prior to judgment were not findings of fact); *Texas Bd. of Chiropractic Examrs. v. Texas Med. Ass'n*, 375 S.W.3d 464, 482 n. 24 (Tex. App.—Austin 2012, pet. denied) (noting that judge's explanatory letter to parties does not impact the standard or scope of appellate review). In any event, we would affirm the district court's right result even in the face of its wrong legal explanation. *See Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 442 (Tex. App.—Austin 2009, no pet.) (noting that a trial court does not abuse its discretion if it reaches the right result for

---

[5] The Parker Group does not assert that the Dallas protective order would shield the Reaves Audit from disclosure in the event the district court properly determined it to be core public information. We express no opinion as to whether it would.

8

the wrong reason (citing *Donaldson v. Barr*, 86 S.W.3d 718, 720 (Tex. App.—Houston [1st Dist.] 2002, no pet.)). Instead, the appropriate focus is on whether there is evidence that supports the district court's finding that the Reaves Audit was "completed." *See Butnaru*, 84 S.W.3d at 211("The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision.").

The Parker Group urges that the evidence negates "completeness" because the copy of the Reaves Audit in dispute omits a "Detailed Findings of Claims Audit," which the document indicates was intended to be attached as an appendix. The Parker Group thus suggests that a "completed" audit under PIA section 522.022 is an audit that contains all its component parts—i.e., is "whole." In contrast, the Attorney General and the City imply that a "completed" audit is one that has been finished or brought to an end, such that the copy of the Reaves Audit in dispute may be "complete" even if the aforementioned appendix was omitted. Consequently, we must confront a threshold issue of statutory construction—i.e., in what sense did the Legislature use "completed"?

Because the PIA does not define "completed," we must look to its plain and ordinary meaning. *See Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010). To do so here, we begin with the word's usage within the relevant PIA provisions. We find it significant that the Legislature used "completed" in section 552.022 rather than "complete." *See* Tex. Gov't Code § 522.022(a)(1). "Completed," as it is used in section 552.022, is the past-participle form of the verb "complete," which primarily means "bring to an end." *See Webster's Third New Int'l Dictionary* 465 (defining the verb "complete"), 1646 (defining "participle"), 1653 (defining "past participle") (2002); *see also* Tex. Gov't Code § 311.011(a) (Code Construction Act provision requiring that "[w]ords and phrases shall be read in context and construed according to the rules of grammar

9

and common usage"). Past participles such as "completed" usually have a passive meaning. *See Webster's* at 1653 (noting that past participle forms of transitive verbs usually have passive meanings); *see also id.* at 465 (noting that "complete" is a transitive verb). In comparison, the adjective "complete" primarily means "possessing all necessary parts, items, components, or elements: not lacking anything necessary"—i.e., "entire" or "whole"—while its secondary meaning is "brought to an end or to a final or intended condition: concluded." *See id.* (defining adjective "complete"). Thus, a "completed audit" denotes an audit that has been brought to an end and a "complete audit" would be a whole audit or the entire audit. Accordingly, under the plain terms of PIA section 552.022, an audit is core public information if it has been, simply stated, finished. *See id.* at 853 (defining "finish" as "bring to an end"). And while a "completed" audit may also be "complete"—as in containing the whole or entire—it is not required to be so under the plain terms of section 552.022(a). Similarly, because section 552.022(a) comprehends the possibility that a "completed" (finished) audit may nonetheless not be "complete" (a whole copy), the fact that an audit is not "complete," while perhaps capable of supporting an inference that the audit has likewise not been "completed," would fall short of conclusive evidence of that fact.

The evidence presented to the district court in connection with the temporary injunction included testimony from Reaves, the author of the audit, that she had been retained in the Dallas defamation case to audit the Parker Group's administration of the City's healthcare plan, that she created the Reaves Audit, and that she submitted it to the City on March 18, 2011, in what she considered to be a completed form. Specifically, she described the Reaves Audit as her "final audit report" and also averred that "based on [her] education, training, and experience," the Reaves Audit "is final, complete, statistically reliable, and was done in accordance with accepted industry

10

standards and methodology." The copy of the Reaves Audit that was admitted into evidence under seal is dated March 18, 2011, and has Reaves's signature on the front page under "Prepared and Submitted by." In the introduction, the audit explains, "This report presents [the auditor]'s findings of a detailed review of The Parker Group'[s] administration of the City of Lubbock medical, pharmacy and dental plans . . . . ," and "sets forth [the auditor]'s conclusions and observations derived from the review of the available information." The evidence in the record also includes documentation showing that the City of Lubbock, which hired Reaves to conduct the audit, considered the Reaves Audit to be completed.

The Parker Group emphasized in its evidence to the district court that the audit was missing certain components. First, as described earlier, the table of contents for the Reaves Audit references an appendix titled "Detailed Findings of Claims Audit," but the page listed is essentially blank except for the words "APPENDIX - DETAILED FINDINGS OF CLAIMS AUDIT." Nothing else matching the description of the appendix is attached to the audit. The Parker Group further presented lengthy testimony from a certified public accountant that the Reaves Audit was not a completed audit because, generally stated, the appendix was not attached and the audit did not meet accounting industry standards for audits. It should be noted here, however, that Reaves testified that she was not an accountant. Finally, the Parker Group elicited a stipulation from the attorney representing the City that the Reaves Audit remained an ongoing concern in the arbitration proceedings and that the City continued to request documents related to the subject matter of the Reaves Audit after the Dallas case had concluded. But while these circumstances—i.e., a missing appendix, failure to meet accounting standards, and continued expansion and use—may be probative

11

of whether the Reaves Audit is "completed" under the plain language of the PIA, they are not singularly dispositive of whether the Reaves Audit was brought to an end or concluded.

Viewing the evidence in the light most favorable to the district court's ruling, drawing all legitimate inferences from the evidence, and deferring to the district court's resolution of the conflicting evidence, we conclude that the evidence before the district court supports its determination that the Reaves Audit was completed and, thus, core public information under the PIA. Although the Parker Group's argument regarding the missing appendix has some intuitive appeal and, as suggested, may be probative of whether the audit was "completed," there is evidence in the record to support the district court's conclusion that the Reaves Audit was finished or concluded. Further, while it may be true that professional accounting standards require more than what the Reaves Audit offers and that fact may be probative of the audit's state of completion (and competency), a non-conforming audit could still be concluded, especially given the evidence that Reaves was not an accountant subject to those professional standards and that she had finished it according to other applicable standards. For essentially the same reasons, the evidence that the City and Reaves continued to work on the Reaves Audit after March 18, 2011, in connection with the arbitration proceeding is likewise not dispositive of whether the Reaves audit is a "completed" audit. In sum, although there is evidence that Reaves continued to work on the Reaves Audit after March 18, 2011, that the audit was missing contents as of March 18, 2011, and that the audit did not meet professional accounting standards, there is some evidence that the Reaves Audit was finished as of March 18, 2011. As such, the district court's conclusion that the Reaves Audit is a "completed" audit is supported by the evidence. *See Butnaru*, 84 S.W.3d at 211 ("The trial court does not abuse its discretion if some evidence reasonably supports the trial court's decision.").

12

The district court's conclusion that the Reaves Audit was a "completed audit" meant that it was core public information under PIA section 552.022(a)(1). Core public information cannot be withheld from disclosure unless other law explicitly makes the information confidential. *See* Former Tex. Gov't Code § 552.022(a). The Parker Group does not urge any other basis for withholding it. Accordingly, the district court's conclusion that the Parker Group was not likely to prevail on its claim was not arbitrary or unreasonable and was not made without reference to guiding rules and principles. *See Butnaru*, 84 S.W.3d at 211; *Davis*, 571 S.W.2d at 862; *INEOS*, 312 S.W.3d at 848.

We overrule the Parker Group's first, second, third, and fifth issues.

**Evidentiary rulings**

The Parker Group's remaining appellate issues challenge the district court's decision to exclude two groups of documents from the evidence submitted at the temporary-injunction hearing. The first group consists of a letter from the Lubbock City Attorney, Amy Sims, to the arbitrator in the contract dispute regarding the need for documents to complete the Reaves Audit and several notices of subpoena from the City to third parties seeking documents related to matters at issue in the Reaves Audit. The Parker Group contends that these documents, which were all created after March 18, 2011, prove that the Reaves Audit was not "completed." The second group includes Sims's deposition testimony and an annotated copy of the Reaves Audit in which Sims acknowledges, according to the Parker Group, that the Reaves Audit may be protected by the Dallas protective order. According to the Parker Group, this second group of excluded documents prove that the Dallas protective order bars disclosure of the report.

13

*Standard of review*

We review a trial court's decisions regarding the admission of evidence for an abuse of discretion. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *E.I. du Pont de Nemours Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). An appellant must show that: (1) the trial court erred in not admitting the evidence; (2) the excluded evidence was controlling on a material issue dispositive of the case and was not cumulative; and (3) the error in the exclusion of the evidence probably caused the rendition of an improper judgment. *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000).

*Evidence that the audit was not "completed"*

Assuming without deciding here that the district court erred in excluding the first group of documents—i.e., the Sims letter and the subpoena—and even further assuming that these excluded documents would have shown that Reaves continued to work on the audit after March 18, 2011, we would still not reverse the district court's decision here because the Parker Group has failed to show that the error was harmful. *See id.* First, the excluded evidence here is cumulative of other evidence in the record. For example, Reaves testified that she had been retained to conduct the same audit in the arbitration proceedings. Further, the City stipulated, in response to the Parker Group's efforts to get these documents admitted, that there was an overlap of issues between the Dallas litigation and the arbitration proceedings, that the overlap included the subject matter of the Reaves Audit, and that there was ongoing discovery in the arbitration proceedings that directly related to the issues in the Reaves Audit. Second, even if the excluded evidence had not been cumulative,

14

our review of the district court's decision to deny the Parker Group's application for temporary injunction requires us to review the evidence submitted in the light most favorable to its decision, draw all legitimate inferences from the evidence, and to defer to the court's resolution of conflicting evidence. *See Davis*, 571 S.W.2d at 862. As discussed above, there is evidence supporting the conclusion that the Reaves Audit was "completed." Thus, even if the excluded evidence conclusively established that the Reaves Audit was used, changed, and expanded in connection with the arbitration proceeding, it would not affect our review of the district court's decision to deny the temporary injunction based on its conclusion that the Reaves Audit was "completed." Accordingly, the Parker Group was not harmed by the district court's exclusion of this evidence. *See Able*, 35 S.W.3d at 617.

### *Evidence that the Reaves Audit was subject to the Dallas protective order*

The Parker Group asserts that it was error for the district court to exclude the second group of documents—i.e., Sims's testimony and the annotated Reaves report——because this evidence would have established that the City considered the Reaves Audit confidential and subject to the Dallas protective order. But, again assuming that the district court erred in excluding this evidence and that it proves what the Parker Group says it proves, we would not reverse the district court's decision here because, as the Parker Group acknowledges, this issue would only be of import if the Reaves Audit is not core public information under the PIA. Given that we have determined that the district court did not err in concluding that the audit was completed, the Reaves Audit is core public information and, as a result, the Parker Group could not be harmed by the exclusion of this evidence.

15

We overrule the Parker Group's fourth and sixth issues.

**CONCLUSION**

Having overruled the Parker Group's issues, we affirm the district court's order denying the Parker Group's application for temporary injunction and vacate the emergency stay previously instituted by this Court.

_____
Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   August 22, 2013