**Opinion issued February 27, 2025**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-23-00129-CV**

———————————

**FRANK C. POWELL, Appellant**

**V.**

**RICHARD M. GRIMES, GRIMES & FERTITTA, P.C., STEVEN P. LINDAMOOD, LINDAMOOD & ROBINSON, P.C., NICHOLAS BRUNO, BECK REDDEN LLP, CATHERINE HERRINGTON HALE, THE HERRINGTON LAW FIRM, P.C., STEPHEN FLETCHER, JULIANA FLETCHER, and KEVIN FLETCHER, Appellees**

**On Appeal from the 133rd District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-29832**

# O P I N I O N

Appellant, Frank C. Powell, appeals the trial court's imposition of sanctions

and dismissal of his lawsuit for conspiracy, fraud, and gross negligence against

Richard M. Grimes, Grimes & Fertitta, P.C., Steven P. Lindamood, Lindamood & Robinson, P.C., Nicholas Bruno, Beck Redden LLP, Catherine Herrington Hale, The Herrington Law Firm, P.C., Stephen Fletcher, Juliana Fletcher, and Kevin Fletcher (collectively, "appellees"), arising out of their alleged conduct in an earlier child custody case involving Powell's former client, Catherine Molloy.[1] In six issues, Powell contends that the trial court erred in granting appellees' motions to dismiss, awarding appellees their attorney's fees, and imposing sanctions against Powell.

We affirm most of the trial court's judgment; we reverse only that part of the judgment dealing with one of the assessed sanctions. We remand to allow the trial court to the opportunity to assess a different, lawful sanction if it sees fit.

### Background

This Court has exhaustively discussed the circumstances that preceded this appeal in other opinions. *See Powell v. Tex. Comm'n for Lawyer Discipline*, No. 01-23-00224-CV, 2024 WL 5249169, at *1–9 (Tex. App.—Houston [1st Dist.] Dec. 31, 2024, no pet. h.) (mem. op.) (summarizing Powell's conduct in child custody

---

[1] In his appellant's brief, Powell identifies the Honorable Sandra Peake, who presided over the child custody case, as an appellee. *See In the Interest of H.A.F. & C.P.F., Children*, Cause No. 2018-67151, in the 257th District Court of Harris County, Texas. He named her as a defendant in the trial court, but the record shows that Powell never executed service on Judge Peake, and she never appeared in the trial court. She was not included in the trial court's judgment and is not a party to this appeal. *See Wilson v. Dunn*, 800 S.W.2d 833, 836–37 (Tex. 1990); *In re P.R.J.E.*, 499 S.W.3d 571, 574 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

case and affirming trial court judgment of disbarment); *Powell v. Fletcher*, 695 S.W.3d 675, 677, 681 (Tex. App.—Houston [1st Dist.] 2024, pet. denied) (affirming sanctions imposed on Powell for filing motion to recuse judge of 257th District Court of Harris County in bad faith); *Molloy v. Fletcher*, No. 01-19-00840-CV, 2021 WL 1618466, at *1 (Tex. App.—Houston [1st Dist.] Apr. 27, 2021, no pet.) (mem. op.) (dismissing appeal of child custody suit based on trial court's findings, after hearing that took place just before Molloy's death on August 27, 2020, that Molloy had expressed clear and unequivocal desire to dismiss appeal and Powell had refused to follow her instructions); *In re Molloy*, No. 01-19-00894-CV, 2021 WL 1618469, at *1 (Tex. App.—Houston [1st Dist.] Apr. 27, 2021, orig. proceeding) (mem. op.) (dismissing mandamus proceedings based on trial court findings addressed in *Molloy v. Fletcher*); *In re Molloy*, No. 01-19-00621-CV, 2020 WL 4589760, at *1 (Tex. App.—Houston [1st Dist.] Aug. 11, 2020, orig. proceeding) (mem. op.).

Molloy was the mother of twin children born in 2011 ("the children"). After she and Kevin Fletcher, the children's father, separated, Kevin sued seeking divorce and custody of the children (the "custody case"). Kevin's parents, Steven Fletcher and Juliana Fletcher, who were involved in caring for the children, intervened in the custody case.

The parties were all represented by counsel in the custody case. Steve Lindamood of Lindamood & Robinson, P.C. represented Kevin, Richard Grimes of

Grimes & Fertitta, P.C. represented Kevin's parents, and Molloy, an attorney herself, also had representation. The parties participated in a mediation that resulted in binding and irrevocable settlement agreement (the "MSA").[2]

Powell was not involved in the custody case until a few months later, when he appeared as new counsel for Molloy. Powell raised a drafting dispute with the mediator and invoked the MSA's arbitration provision. He also threatened to bring more litigation and cause financial burden to the Fletchers if they did not agree to renegotiate the MSA.

The trial court in the custody case entered the final judgment in August 2019. Powell filed post-judgment motions and appealed the final judgment, purportedly on Molloy's behalf. Powell's efforts to undo the MSA were unsuccessful.

While the appeal of the custody case was pending in this Court, the Fletchers, who were represented in the appeal by Nicholas Bruno and Beck Redden, LLP, filed a motion to show authority, alleging that Molloy had informed them that she no longer wished to prosecute the appeal and Powell no longer represented her yet refused to follow her instructions. This Court abated the appeal and ordered the trial court in the custody case to hold an evidentiary hearing and make findings of fact on those issues.

---

[2] *See* TEX. FAMILY CODE § 153.0071(d); *see generally Powell v. Tex. Comm'n for Lawyer Discipline*, No. 01-23-00224-CV, 2024 WL 5249169, at *1–2 (Tex. App.— Houston [1st Dist.] Dec. 31, 2024, no pet. h.) (mem. op.).

4

Catherine Herrington Hale and The Herrington Law Firm, P.C. represented Molloy at the evidentiary hearing. The custody case trial court found that Powell did not have authority to represent Molloy after September 2019, failed to follow Molloy's direction and wishes regarding representation, and detailed multiple conflicts of interest inherent in Powell's relationships with Molloy.[3]

In his petition filed in this case, Powell alleged that appellees engaged in various forms of misconduct in the custody case. He alleged that Kevin's parents falsely claimed that they had standing because the children lived with them. Powell also alleged that appellees filed other "false pleadings" to extend the litigation, "driv[ing] up the costs and harass[ing]" Molloy. And according to Powell, appellees "conspired to commit fraud" by inducing Molloy to write a false letter to the Fletchers, dated May 14, 2020, in which she stated that she had repeatedly asked Powell to dismiss the pending litigation against the Fletchers.

As to appellees' motion to show authority in the custody case appeal, Powell alleged that it contained false pleadings and exhibits. In the appellate-court-ordered evidentiary hearing, according to Powell, the appellee attorneys and the trial court in the custody case colluded in a civil conspiracy to manipulate Molloy into falsely testifying that she did not want to continue prosecuting her appeal. Powell also

---

[3]    *See Powell v. Fletcher*, No. 01-22-00640-CV, 2024 WL 4885846, at \*2 (Tex. App.—Houston [1st Dist.] Nov. 26, 2024, no pet.) (mem. op.).

5

alleged that Herrington Hale knew that Molloy was testifying falsely and "manipulated" the Texas Rules of Evidence to prevent Powell from questioning Molloy in the hearing. Powell accused appellees of "collud[ing] in a civil conspiracy" to prevent him "from putting forth a defense against the false allegations and false testimony."

Molloy committed suicide shortly after she testified at the appellate-court-ordered evidentiary hearing. The trial court in the custody case signed the allegedly false findings of fact and conclusions of law proposed by appellees "without modification," and Lindamood forwarded them to the Texas State Bar to initiate a grievance against Powell. The trial court also signed an order sanctioning Powell which, according to Powell, was "based on false testimony and not supported by the evidence."

Powell asserted claims against appellees for fraud, civil conspiracy, and gross negligence. He also raised theories of vicarious liability and respondeat superior against the law firms based on the lawyers' alleged conduct, asserting that the lawyers "were acting in the course and scope of their employment" with their law firms in the custody case but "outside the scope of a lawyer's duties."

As to damages, Powell alleged that he was entitled to compensation for injury to his reputation, lost revenues, "and all consequential damages."

Appellees moved to dismiss Powell's claims against them under Texas Rule of Civil Procedure 91a.[4] In their motions to dismiss, appellees explained that in this lawsuit, Powell sued his opposing counsel and the opposing parties in the custody case, as well as the attorney who had succeeded him as counsel for Molloy. They asserted that Powell's claims against the attorneys and law firms based on the representation of their clients in litigation were barred by attorney immunity and that all his claims were based on communications made in the course of judicial proceedings and thus were also barred by the judicial communications privilege. As for the grievance against Powell, the Fletchers pointed out that no liability can arise from filing a grievance against a Texas attorney.[5] Herrington Hale and the Herrington Law Firm also moved to dismiss Powell's claims against them under the Texas Citizen's Participation Act ("TCPA").[6]

Powell responded that appellees' liability stemmed from "the cascade of events" resulting from their "criminal activity" in the custody case, including "witness tampering, falsifying evidence, and suborning perjury," which, according

---

[4]    *See* TEX. R. CIV. P. 91a.

[5]    *See* TEX. GOV'T CODE ANN. § 81.072(g) ("A person may not maintain an action against a complainant or witness in a disciplinary proceeding based on a communication made by the complainant or witness to the commission, a grievance committee, or the chief disciplinary counsel. The immunity granted by this subsection is absolute and unqualified.").

[6]    *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001–.011.

to Powell, began after he filed a motion for sanctions against the Fletchers, Grimes, and Lindamood for failure to mediate in good faith. Powell also argued that attorney immunity and the judicial communications privilege did not apply because "most of the events took place" after the custody court had "lost plenary power."

Appellees next filed motions for sanctions against Powell and his attorney, Julie Ketterman, under Texas Civil Practice and Remedies Code chapter 10 and Texas Rule of Civil Procedure 13.[7] They asserted that his lawsuit was groundless for the same reasons they advanced in their motions to dismiss. They also maintained that Powell's suit was filed for an improper purpose, pointing out that both Powell and Ketterman had been sanctioned and held in contempt for their conduct in the custody case and they were using this lawsuit to collaterally attack the result in the custody case. Appellees noted that the trial court's findings in the custody case provided direct evidence of bad faith and harassment, as did Powell's general history of abusing the judicial process, for which Powell had been repeatedly sanctioned.

In his response to the sanctions motions, Powell asserted that he was entitled to the presumption that his pleadings were filed in good faith, he made a reasonable

---

[7] Herrington Hale and the Herrington Law Firm did not request sanctions under those authorities, but they moved for sanctions under the TCPA after the trial court granted their TCPA motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(2).

8

inquiry before filing suit, his claims warranted an extension of existing law, and his pleadings were not groundless.

The trial court granted appellees' motions to dismiss and awarded them their reasonable and necessary attorney's fees under Texas Rule of Civil Procedure 91a.7 in the following amounts:

| | |
|---|---|
| Beck Redden and Bruno | $59,472.50 |
| Grimes & Fertitta and Grimes | $20,201.40 |
| Lindamood & Robinson and Lindamood | $25,200.00 |
| The Fletchers | $30,240.00 |
| Herrington Hale and the Herrington Law Firm | $17,312.00 |

The trial court also awarded appellees conditional appellate attorney's fees. And it ordered Powell and Ketterman, jointly and severally, to pay the following sanctions:

| | |
|---|---|
| Beck Redden and Bruno | $120,0000.00 |
| Grimes & Fertitta and Grimes | $40,000.00 |
| Lindamood & Robinson and Lindamood | $50,000.00 |
| Stephen Fletcher, for the benefit of the children | $250,000.00 |
| Texas Access to Justice Foundation | $1,000,000.00 |

In its final judgment, the trial court incorporated its dismissal order, sanctions orders, and attorney's-fee orders, and it dismissed Powell's remaining claims.

**Motion to Dismiss under Texas Rule of Civil Procedure 91a**

In his first, second, and third issues, Powell asserts that the trial court erred in granting appellees' motions to dismiss under Texas Rule of Civil Procedure 91a and dismissing his claims.

## A.     Standard of Review

Under Texas Rule of Civil Procedure 91a, a party may "move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1; *Randhawa v. Amick Storm Mgmt., LLC*, No. 01-23-00757-CV, 2024 WL 3891861, at *2 (Tex. App.—Houston [1st Dist.] Aug. 22, 2024, no pet.) (mem. op.); *Reynolds v. Quantlab Trading Partners US, LP*, 608 S.W.3d 549, 555 (Tex. App.—Houston [14th Dist.] 2020, no pet.). "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1. "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.* The trial court may not consider evidence in ruling on a 91a motion; it must decide the motion based "solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59." TEX. R. CIV. P. 91a.6; *see also* TEX. R. CIV. P. 59 (permitting "[n]otes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on" to be attached to and made part of pleadings). We review a trial court's decision on a Rule 91a motion

10

to dismiss de novo. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020); *Randhawa*, 2024 WL 3891861, at *2.

**B.      Timeliness of Dismissal Orders**

In his first issue, Powell argues that the trial court erred in dismissing his suit against appellees because the dismissal orders were not entered within forty-five days of the filing as required by Texas Rule of Civil Procedure 91a.

According to Rule 91a, a motion to dismiss "must . . . be granted or denied within 45 days after the motion is filed." TEX. R. CIV. P. 91a.3. This Court observed that while the use of "must" is generally construed as mandatory, Rule 91a does not provide any consequences or sanctions if the trial court does not comply with the forty-five-day deadline. *City of Pasadena v. Poulos*, No. 01-22-00676-CV, 2023 WL 7134974, at *5 (Tex. App.—Houston [1st Dist.] Oct. 31, 2023, no pet.) (mem. op.); *see also MedFin Manager, LLC v. Stone*, 613 S.W.3d 624, 628 (Tex. App.—San Antonio 2020, no pet.) (Rule 91a's deadline "is directory, not jurisdictional"). Thus, while the failure to comply with the forty-five-day deadline is error, the error is not reversible if it is found to be harmless. *Walker v. Owens*, 492 S.W.3d 787, 790–91 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

Powell asserts that the trial court's failure to timely rule on the Rule 91a motions to dismiss caused him harm because it foreclosed his efforts to depose appellees. But if the pleading itself reveals that the plaintiff's claims have no basis

11

in law or fact, discovery would not change that result. *See* TEX. R. CIV. P. 91a.6 (trial court may not consider evidence in ruling on motion). We hold that any error in failing to comply with the forty-five-day deadline is harmless.

We overrule Powell's first issue.

## C.    **Propriety of Dismissal**

In his second issue, Powell argues that the trial court erred in dismissing his suit against appellees because he alleged plausible claims for fraud and conspiracy to commit fraud. In his third issue, Powell asserts that the trial court erred by dismissing Powell's claims under Texas Rule of Civil Procedure 91a based on attorney immunity and the judicial communications privilege. Because both these issues challenge whether attorney immunity and the judicial communications privilege provide a sound basis for dismissal, we consider them together.

Rule 91a "permits motions to dismiss based on affirmative defenses." *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020); *see Randhawa*, 2024 WL 3891861, at \*2; *see also Smale v. Williams*, 590 S.W.3d 633, 637–38 (Tex. App.—Texarkana 2019, no pet.) (affirming grant of Rule 91a motion based on res judicata); *Seger v. Branda*, No. 01-21-00224-CV, 2022 WL 17981559, at \*10 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, pet. denied) (mem. op.) (affirming grant of Rule 91a motion based on statute of limitations).

In ruling on a Rule 91a motion, the trial court "may not consider evidence" and "must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits" permitted by the Texas Rules of Civil Procedure. TEX. R. CIV. P. 91a.6; *see also Bethel*, 595 S.W.3d at 654. But "[i]n deciding a Rule 91a motion, a court may consider the defendant's pleadings if doing so is necessary to make the legal determination of whether an affirmative defense is properly before the court." *Bethel*, 595 S.W.3d at 656. A trial court may grant a Rule 91a motion to dismiss based on an affirmative defense if it meets the rule's standard. *Id.* If an affirmative defense cannot "be conclusively established by the facts in [the] plaintiff's petition" and requires consideration of evidence, "such [a] defense[] [is] not a proper basis for a [Rule 91a] motion to dismiss." *Id.*

The judicial communications privilege and attorney immunity are "independent defenses serving independent purposes." *Landry's Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 46 (Tex. 2021) (internal quotations and alterations omitted). The judicial communications privilege absolutely privileges a party to private litigation "to publish defamatory matter concerning another" in open court, pre-trial hearings, depositions, affidavits and the pleadings or other papers filed in a case, as well as those made "preliminary to a proposed judicial proceeding." *Id.* at 46–47 (internal quotations omitted). "Any communication, even perjured testimony, made in the course of a judicial proceeding, cannot serve as a

basis for a suit in tort." *Crain v. Unauthorized Prac. of Law Comm.*, 11 S.W.3d 328, 335 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

Generally, "attorneys are immune from civil liability to non-clients for actions taken in connection with representing a client in litigation." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (internal quotation omitted). According to Powell, the claims that he alleged against the appellee attorneys included fraudulent or criminal conduct and, as a result, fell outside the scope of attorney immunity. But fraudulent or criminal conduct "is not categorically excepted from the protections of attorney civil immunity when the conduct alleged is connected with representing a client in litigation." *Bethel*, 595 S.W.3d at 657; *see Cantey Hanger*, 467 S.W.3d at 483, 481, 484–86; *see also Landry's*, 631 S.W.3d at 47 (explaining attorney immunity is "comprehensive affirmative defense protecting attorneys from liability to non-clients" such that "otherwise wrongful conduct" by attorney "is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client." (internal quotations omitted)). The defense is inapplicable only if "an attorney engages in conduct that is not lawyerly work or is entirely foreign to the duties of a lawyer or falls outside the scope of client representation." *Taylor v. Tolbert*, 644 S.W.3d 637, 646 (Tex. 2022) (internal quotations omitted).

Thus, "[m]erely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to

14

the duties of an attorney.'" *Cantey Hanger*, 467 S.W.3d at 481; *see also Taylor*, 644 S.W.3d at 646–47 ("'Foreign to the duties' does not mean something a good attorney should not do; it means that the attorney is acting outside his or her capacity and function as an attorney."). The inquiry "turns on the task that was being performed, not whether the challenged conduct was meritorious." *NFTD, LLC v. Haynes & Boone LLP*, 652 S.W.3d 546, 555 (Tex. 2022).

Powell asserts that "[c]ommunicating directly, or indirectly, with an opposing party through your clients, to manipulate an opposing party known to be vulnerable is outside the scope of representation." The conduct that Powell describes, though, is the kind of persuasive advocacy used in mediating disputes and not "foreign to the duties of an attorney." *See Cantey Hanger*, 467 S.W.3d at 481. "Even conduct that is wrongful in the context of the underlying suit is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client." *Id.* (internal quotations omitted); *see also Bradt v. West*, 892 S.W.2d 56, 72 (Tex. App.— Houston [1st Dist.] 1994, writ denied) ("[A]n attorney does not have a right of recovery, under any cause of action, against another attorney arising from conduct the second attorney engaged in as part of the discharge of his duties in representing a party in a lawsuit in which the first attorney also represented a party."). Despite Powell's choice of descriptive language, the other types of conduct the appellee attorneys allegedly engaged in—filing motions, presenting evidence and testimony,

15

and participating in hearings—are likewise within the scope of an attorney's legal representation of his client. *See Cantey Hanger*, 467 S.W.3d at 481. The trial court did not err in concluding that attorney immunity applied to the actions alleged by Powell against the appellee attorneys.

Powell also argues that his claims against appellees are not barred by the judicial communications privilege because he alleged that appellees' civil conspiracy and fraud caused him not only reputational injury but also lost revenue and consequential damages.

"The judicial-[communications] privilege exists to facilitate the proper administration of the justice system." *Landry's*, 631 S.W.3d at 48. It does so by relieving the participants in the judicial process from fear of retaliatory lawsuits for statements they make in connection with the judicial proceeding itself." *Id.*; *see also Crain,*, 11 S.W.3d at 335 ("Any communication, even perjured testimony, made in the course of a judicial proceeding, cannot serve as a basis for a suit in tort.").

Powell cites authorities explaining that the purpose of the judicial communications privilege is to foreclose claims for reputational damages, such as defamation, slander, or disparagement. *See Bird v. W.C.W.*, 868 S.W.2d 767, 771–72 (Tex. 1994); *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982); *Deuell v. Tex. Right. to Life Comm'n, Inc.*, 508 S.W.3d 679, 689 (Tex. App.—Houston [1st Dist.] 2016 pet. denied). But Powell's claims for reputational damages and lost revenues

16

both arise from the same allegedly defamatory statements. The only difference is whether the claimed injury is personal or professional. *See Mem'l Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 423 (Tex. 2022) (explaining business disparagement claims, like defamation claims, require proof of a published false statement that caused damages to plaintiff, but business disparagement claims allow for recovery of special damages such as lost income or profits); *see also Rockman v. OB Hospitalist Grp., LLC*, No. 01-21-00383-CV, 2023 WL 3311548, at *2–3 (Tex. App.—Houston [1st Dist.] May 9, 2023, no. pet.) (mem. op.) (physician claimed defamation per se and business disparagement resulting in lost income, based on hospital's statement that he was removed from staff "due to patient care issues").

All the injuries that Powell alleged would have resulted solely from statements made in court filings and hearings. Thus, Powell may not sidestep the application of the judicial communications privilege by claiming damages for lost revenues.

We hold that the trial court did not err in granting appellees' motions to dismiss based on attorney immunity and the judicial communications privilege.

We overrule Powell's second and third issues.[8]

---

[8]   Our disposition of these issues makes it unnecessary to address Powell's fourth issue challenging the trial court's dismissal under the TCPA of Powell's claims against Hale and the Hale-Herrington law firm. *See* TEX. R. APP. P. 47.1.

## Attorney's-Fee Award

In his fifth issue, Powell asserts that the trial court erred in awarding appellees their attorneys' fees.

We review a trial court's award of attorney's fees for an abuse of discretion. *See Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *See Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 742 (Tex. 2018); *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). Under this standard, we cannot reverse the trial court's award merely because we would have awarded a different amount of fees. *See Samlowski*, 332 S.W.3d at 410 (noting abuse of discretion standard of review insulates trial court's reasonable decisions from appellate second-guessing). "Further, courts are free to look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties to determine a reasonable fee." *McMahon v. Zimmerman*, 433 S.W.3d 680, 693 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Santos v. Tex. Enters., Inc.*, No. 03-09-00579-CV, 2010 WL 4054479, at *2 (Tex. App.—Austin Oct. 15, 2010, no pet.) (mem. op.).

Texas follows the lodestar method to determine the amount of an award of attorney's fees.[9] *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496 (Tex. 2019). The lodestar method requires the fact finder to determine reasonable attorney's fees by first determining the reasonable hours spent by counsel in the case and the reasonable hourly rate for counsel's work. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). The fee claimant must provide sufficient evidence of both the reasonable hours worked and the reasonable hourly rate. *Rohrmoos*, 578 S.W.3d at 498. Sufficient evidence includes, at a minimum, evidence of: (1) the nature of the work performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *See id.*; *see also City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) ("In *El Apple*, we said that a lodestar calculation

---

[9] The lodestar method is a shorthand version of the *Arthur Andersen* factors that a fact finder should consider when determining the reasonableness of a fee. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496 (Tex. 2019) (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (listing factors as: (1) time and labor required, novelty and difficulty of questions involved, and skill required to perform legal service properly; (2) likelihood that acceptance of particular employment will preclude other employment by lawyer; (3) fee customarily charged in locality for similar legal services; (4) amount involved and results obtained; (5) time limitations imposed by client or by circumstances; (6) nature and length of professional relationship with client; (7) experience, reputation, and ability of lawyer or lawyers performing services; and (8) whether fee is fixed or contingent on results obtained or uncertainty of collection before legal services have been rendered)).

requires certain basic proof, including itemizing specific tasks, the time required for those tasks, and the rate charged by the person performing the work."). The fee claimant must establish the reasonableness and necessity of its requested fees. *Rohrmoos*, 578 S.W.3d at 488.

Texas Rule of Civil Procedure 91a.7 mandates an award of attorney's fees to a prevailing party on a Rule 91a motion to dismiss. *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 691 (Tex. App.—Houston [1st Dist.] 2018, pet. denied); *see* TEX. R. CIV. P. 91a.7. Fixing the amount of "reasonable and necessary" attorney's fees, though, is typically a matter within the trial court's discretion. *Cypress Creek EMS*, 548 S.W.3d at 691.

Powell argues that the attorney and law firm appellees, except for Hale, are not entitled to recover attorney's fees because they represented themselves in the trial court and thus did not "incur" attorney's fees as required by Rule 91a. When an individual—even a licensed attorney—represents himself, there are no attorney's fees "incurred." *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 299–300 (Tex. 2011). Fees are "incurred when one becomes liable for [them]." *Rohrmoos*, 578 S.W.3d at 489; *see Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010). A lawyer representing himself in an individual capacity does "not incur attorney's fees as that term is used in its ordinary meaning because he did not at any time become liable for attorney's fees." *Jackson*, 351 S.W.3d at 300.

20

Uncontroverted evidence that legal services were performed on a party's behalf, though, is some evidence that the party incurred attorney's fees. *Garcia*, 319 S.W.3d at 642. Here, the evidence submitted by Beck Redden and Bruno shows that Beck Redden attorneys David Jones and Zachary Nelson performed the legal work on their behalf. Powell did not proffer any controverting evidence. Thus, Beck Redden and Bruno showed that they were entitled to recover their attorney's fees.

The law firm appellees are fictional legal persons and thus cannot represent themselves. *See Simmons, Jannace & Staff, LLP v. Buzbee Law Firm*, 324 S.W.3d 833, 833 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see also Kunstoplast of Am. v. Formosa Plastics Corp.*, 937 S.W.2d 455, 456 (Tex. 1996) (corporations may appear only through licensed attorneys). The evidence shows that Lindamood appeared both pro se and on behalf of his firm, Lindamood & Robinson, and Grimes likewise represented himself and his law firm, Grimes & Fertitta. The law firm appellees were entitled to recover attorney's fees for services performed on their behalf. *See Tuberquia v. Jamison & Harris*, No. A14-91-00055-CV, 1991 WL 260344, at *2 (Tex. App.—Houston [14th Dist.] Dec. 12, 1991, no writ) (not designated for publication) (law firm represented by one of its own attorneys was entitled to recover attorney's fees for the time and effort expended); *Tesoro Petroleum Corp. v. Coastal Ref. & Mktg., Inc.*, 754 S.W.2d 764, 766 (Tex. App.—

21

Houston [1st Dist.] 1988, no writ) (law firm was entitled to recover attorney's fees for the time and effort of attorney acting on its behalf).

Powell also complains that appellees were not entitled to recover their fees because the billing records they submitted were "too heavily redacted" and did not properly segregate recoverable fees from unrecoverable fees. These purported deficiencies are not apparent from the record, and we note that because neither Powell nor Ketterman, his attorney, appeared at the hearing, he made no timely and specific objections to appellees' testimony or exhibits supporting their requests for attorney's fees. Thus, he did not preserve this complaint for appeal. *See* TEX. R. APP. P. 33.1(a)(1).

Powell asserts that the trial court erred in refusing to grant him a continuance of the attorney's-fee hearing. Powell's request for a continuance consisted of an appearance in the trial court by Ketterman's colleague, who explained that Ketterman was in another hearing and orally requested a postponement of the attorney's-fee hearing shortly after it began. A trial court does not err by denying an oral request for a continuance. *See* TEX. R. CIV. P. 251 (continuance shall not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law"). When, as here, a motion for continuance is not verified or supported by affidavit, we presume the trial court did not abuse its discretion by denying the motion. *Louison v. Cadette*, No. 01-22-00034-CV, 2024

WL 5249158, at *10 (Tex. App.—Houston [1st Dist.] Dec. 31, 2024, no pet.) (mem. op.). Further, a motion for continuance that does not comply with Texas Rule of Civil Procedure 251 does not preserve error for appeal. *Id.* Because the motion for continuance was not in writing and did not comply with Rule 251, Powell's oral request for a continuance did not preserve error. *See id.*

Finally, Powell's arguments on appeal about the adequacy of Appellee's attorney's-fee evidence are conclusory. He does not identify the perceived flaws with any specificity or cite to any authority to support a conclusion that the trial court erred in awarding any portion of appellees' requested attorney's fees. As a result, Powell waived this argument due to inadequate briefing. *See Guimaraes v. Brann*, 562 S.W.3d 521, 537–38 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (failure to provide substantive analysis of issues presented results in waiver of complaint on appeal); *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.) ("A failure to provide substantive analysis of an issue waives the complaint."); *see also* TEX. R. APP. P. 38.1(i) (appellant's brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").

We overrule Powell's fifth issue.

**Sanctions Award**

In his sixth issue, Powell asserts that the trial court erred in entering sanctions against Powell for $1,460,000, $1 million of which was awarded to the Texas Equal Access to Justice Foundation, which was not a party to the case.

**A.      Standard of Review**

We review the imposition of sanctions for an abuse of discretion. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2017). A trial court abuses its discretion by "act[ing] without reference to guiding rules and principles to such an extent that its ruling was arbitrary or unreasonable." *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014). "The trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision." *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009).

In deciding whether the award of sanctions amounts to an abuse of discretion, we examine the entire record, including the findings of fact and conclusions of law, reviewing the conflicting evidence in the light most favorable to the trial court's ruling and drawing all reasonable inferences in favor of the court's judgment. *See Cypress Creek EMS*, 548 S.W.3d at 695. To be just, a sanction must be based on a direct relationship between the particular offensive conduct and the sanction imposed, and the sanction must not be excessive in relation to that conduct. *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 540 (Tex. 2016).

We review the entire record to determine whether it includes some evidence of a substantive and probative character that supports the trial court's decision. *See Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2019) ("A decision lacking factual support is arbitrary and unreasonable and must be set aside."). We defer to the trial court's credibility decision made by the trial court. *Anderson v. Hernandez*, No. 01-21-00490-CV, 2023 WL 8630980, at \*6 (Tex. App.—Houston [1st Dist.] Dec. 14, 2023, no pet.) (mem. op.) (citing *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014)).

A sanction must be neither unjust nor excessive. *Nath*, 446 S.W.3d at 363. A sanction is "just" when it is "directed against the abusive conduct with an eye toward remedying the prejudice caused to the innocent party." *Id.* A sanction is not excessive when it is "no more severe than necessary to satisfy its legitimate purposes . . . [which] may include securing compliance with the relevant rules of civil procedure, punishing violators, and deterring other litigants from similar misconduct." *Id.*; *see also Low*, 221 S.W.3d at 614 ("To determine if sanctions were appropriate or just, the appellate court must ensure there is a direct nexus between the improper conduct and the sanction imposed.").

A trial court may be authorized to impose sanctions against a party or the party's attorney by rule, statute, or inherent authority. *See, e.g.*, TEX. R. CIV. P. 13 (Effect of Signing Pleadings, Motions and Other Papers; Sanctions); TEX. CIV. PRAC.

& REM. CODE ANN. §§ 9.001–.014 (Frivolous Pleadings and Claims); *id.* §§ 10.001–.006 (Sanctions for Frivolous Pleadings and Motions); *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 718 (Tex. 2020) ("Courts . . . possess inherent powers that aid the exercise of their jurisdiction, facilitate the administration of justice, and preserve the independence and integrity of the judicial system. A court's inherent authority includes the 'power to discipline an attorney's behavior.'" (internal footnotes omitted)). When an order of sanctions refers to one specific statute, rule, or other authority, either by citing the authority, tracking its language, or both, we are confined to determining whether the sanctions are appropriate under that particular authority. *Metzger v. Sebek*, 892 S.W.2d 20, 51 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

Here, the none of the appellees asked the trial court to exercise its inherent power to impose sanctions on Powell, and the trial court did not invoke its inherent power to sanction Powell. *See Brewer*, 601 S.W.3d at 718; *Greene v. Young*, 174 S.W.3d 291, 302 n.4 (Tex. App.—Houston [1st Dist. 2005, pet. denied). Instead, it made findings to support assessment of sanctions under Texas Civil Practice and Remedies Code chapter 10 and the TCPA. Ultimately, though, the trial court did not award sanctions to the TCPA movant. We consider, then, whether chapter 10 supports the trial court's award of sanctions.

26

**B.      Sanctions Under Texas Civil Practice and Remedies Code Chapter 10**

Chapter 10 provides that the signature of attorneys or parties on a pleading or motion constitutes a certificate by them that, to the best of their knowledge, information, and belief formed after a reasonable inquiry, the instrument is not being presented for an improper purpose, is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, and there is evidentiary support for each allegation or contention. TEX. CIV. PRAC. & REM. CODE ANN. § 10.001. "A court that determines that a person has signed a pleading or motion in violation of [s]ection 10.001 may impose a sanction on the person, a party represented by the person, or both." *Id.* § 10.004.

Powell first asserts that Texas Civil Practice and Remedies Code chapter 10 did not authorize the trial court to order him to pay $1 million to a nonparty—The Texas Access to Justice Foundation. This assertion presents a question of statutory interpretation. In interpreting statutes, we rely on the plain meaning of the statutory text unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). In conducting this analysis, we presume that the legislature selected the statutory language with care and that every word or phrase was used with a purpose in mind. *Id.* Where

27

possible, we give effect to all the statute's words without treating any language as surplusage. *City of Austin v. Quinlan*, 669 S.W.3d 813, 821 (Tex. 2023); *McDowell Owens Eng'g, Inc. v. Timaeus Law Firm, PLLC*, 679 S.W.3d 754, 758 (Tex. App.—Houston [1st Dist.] 2023, pet. denied).

Under Texas Civil Practice and Remedies Code section 10.004(c),

(c) A sanction may include any of the following:

(1) a directive to the violator to perform, or refrain from performing, an act;

(2) an order to pay a penalty into court; and

(3) an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees.

TEX. CIV. PRAC. & REM. CODE § 10.004(c).

Two Texas courts of appeals have considered whether the possible sanctions set forth under section 10.004(c) are exclusive and came to opposite conclusions. In *Sterling v Alexander*, our sister court declared that "[a] trial court should not stray from the list of sanctions set forth in [Texas Civil Practice and Remedies Code section 10.004]." 99 S.W.3d 793, 798 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Conversely, in *Unifund CCR Partners v. Villa*, an en banc majority of the San Antonio Court of Appeals, interpreted the provision as allowing for sanctions beyond the three listed options. 273 S.W.3d 385, 391–92 (Tex. App.—San Antonio 2008), *rev'd on other grounds*, 299 S.W.3d 92 (Tex. 2009). The en banc majority

28

emphasized that the section 10.004(c) used "may include" before listing the three options and for that reason, concluded that the statute did not create a presumption that other possible sanctions were excluded. *See* 273 S.W.3d at 391.

We agree with the Fourteenth Court of Appeals's decision in *Sterling* that the sanctions enumerated under section 10.004(c) are exclusive. The flaw in the San Antonio court of appeals's reasoning is that it does not account for the statutory language that comes after "may include." The legislature followed "may include with the limitation of "any of the following," then listed the possible sanctions as "(1), (2), *and* (3)." *See* TEX. CIV. PRAC. & REM. CODE 10.004(c) (emphasis added). So, the direction that "a sanction may include any of the following," according to the statute's plain language, means that the sanctioning court may impose any of the three types of sanctions listed in the statute. *See id.*

Appellees maintain that, even so, the sanction awarded by the trial court is proper because the order to pay $1 million to the Texas Access to Justice Foundation fits within section 10.004(c)(1) because it directs Powell to perform an act, namely, to pay the Texas Access to Justice Foundation. If part (1) of the statute stood in isolation, then an order to "perform . . . an act" might well include the order to pay the Texas Access to Justice Foundation. But part (1) is not the end of the provision, and it must be read in conjunction with parts (2) and (3), consistent with the principle of statutory interpretation that we must read the provision as a whole and not render

29

any part superfluous. *See Quinlan*, 669 S.W.3d at 821. The other two possible sanctions, listed in parts (2) and (3) respectively, expressly allow for orders to make two specific types of payments: payments to the court and payments to the other party. *See id.* It would render those provisions unnecessary if we were to interpret the directive "to perform, or refrain from performing, an act" as also allowing an order to pay. Under that reading, those provisions would have no use at all. Thus, following controlling principles of statutory interpretation, we conclude that the trial court erred in imposing a sanction under Texas Civil Practice and Remedies Code section 10.004 that required Powell to pay $1 million to the Texas Access to Justice Foundation.[10]

Powell next asserts that appellees failed to meet their burden to overcome the presumption that he acted in good faith with a reasonable basis for filing his lawsuit and made reasonable inquiry before filing it. We consider this remaining portion of Powell's sixth issue as it relates to the sanctions that were awarded to Beck Redden and Bruno ($120,000), Grimes & Fertitta and Grimes ($40,000), Lindamood & Robinson and Lindamood ($50,000) and Stephen, for the benefit of the children ($250,000.00).

---

[10] We express no opinion as to whether the trial court would have acted within its discretion in ordering Powell to make a payment to the Texas Access to Justice Foundation as an exercise of its inherent power.

To determine if a claim is groundless, the trial court must objectively ask whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim at the time the document in question was filed. *WWW.URBAN.INC v. Drummond*, 508 S.W.3d 657, 674 (Tex. App.—Houston [1st Dist.] 2016, no pet.). We determine whether a reasonable inquiry has been made by looking at the facts available to the attorney and the circumstances that existed when the attorney signed and filed the document in question. *Id.*

"Reasonable inquiry" means an inquiry reasonable under the circumstances of the case. *Wenger v. Flinn*, 648 S.W.3d 448, 456 (Tex. App.—San Antonio 2021, no pet.); *see Robson v. Gilbreath*, 267 S.W.3d 401, 406 (Tex. App.—Austin 2008, pet. denied). "Improper purpose" is the equivalent of "bad faith" which is "the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 668–69 (Tex. App.—Dallas 2003, no pet.); *see* C*ypress Creek EMS*, 548 S.W.3d at 691. Bad faith does not exist when a party merely exercises bad judgment or is negligent. C*ypress Creek EMS*, 548 S.W.3d at 691.

Powell does not specifically challenge any of the trial court's findings supporting its conclusion that he did not act in good faith with a reasonable basis for filing his lawsuit or made reasonable inquiry at the time he filed it. He relies solely on his own testimony and Ketterman's testimony at the sanctions hearing to support

his position and ignores other evidence that undermines it. Based on the other evidence, the trial court found that "no attorney who did the bare minimum of research could have believed [Powell's] claims had any legal merit"; that Powell, "despite the opportunity to dismiss the [underlying lawsuit] after its baselessness was revealed, chose to pursue it"; and that Powell's pursuit of the case "was part of a continuous strategy to reverse the rulings in the [custody] case or punish [appellees] for prevailing." The trial court concluded that Powell's "motive was improper" and that he "filed the [underlying lawsuit] in bad faith," "us[ing] Texas courts as a playground for revenge." Because we review conflicting evidence in the light most favorable to the trial court's ruling, we conclude that Powell has failed to show that the trial court abused its discretion in reaching its decision. *See id.* at 695.

Powell also argues that he acted in good faith because the trial court lacked jurisdiction to assess sanctions in the appellate-court-ordered hearing, and the attorney and law firm appellees were not entitled to immunity for participating in a proceeding in which the trial court lacked jurisdiction. The trial court properly rejected this argument. We have consistently held that the trial court had jurisdiction and authority to sanction Powell. *See Powell v. Fletcher*, No. 01-22-00640-CV, 2024 WL 4885846, at *2 (Tex. App.—Houston [1st Dist.] Nov. 26, 2024, no pet.) (mem. op.).; *Molloy*, 2021 WL 1618466, at *1; *In re Molloy*, 2021 WL 1618469, at *1; *see*

*also* TEX. FAM. CODE. ANN. § 155.002 (trial court has continuing and exclusive jurisdiction over child custody case).

Further, Powell complains that the trial court improperly "focused heavily on conduct in unrelated litigation that was attributed to others, not Powell" in imposing sanctions. Yet Powell does not contest that his own testimony shows his involvement in the litigation at issue. In considering it, the trial court properly followed the Texas Supreme Court's instruction to consider "any prior history of sanctionable conduct on the part of the offender." *Low*, 221 S.W.3d at 620 n.5.

We hold that the trial court did not err in concluding that Powell had engaged in conduct that was sanctionable under Texas Civil Practice and Remedies Code chapter 10, but it erred in imposing a sanction that required Powell to pay $1 million to the Texas Access to Justice Foundation.

We sustain the portion of Powell's sixth issue challenging the trial court's order of payment to the Texas Access to Justice Foundation. Because of the trial court's expressed interest in fashioning a sanction that will deter Powell from future misconduct, we remand this case for the trial court to consider ordering a different, lawful sanction in light of the Court's opinion, if it sees fit. We overrule the remaining portion of Powell's sixth issue.

## Conclusion

We reverse the portion of the trial court's judgment ordering Powell to pay $1 million to the Texas Access to Justice Foundation and affirm the remaining portion of the judgment. We remand the case to the trial court for further proceedings consistent with this opinion. All pending motions are dismissed as moot.


Clint Morgan
Justice

Panel consists of Justices Guerra, Caughey, and Morgan.